UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

_____
                                          )
EURO SME SDN BHD,                         )
                                          )
    Plaintiff,                             )
                                          )
    v.                                    )
                                          )
UNITED STATES,                            )
                                          )   Court No. 22-00108
    Defendant,                            )
                                          )
    and                                   )
                                          )
POLYETHYLENE RETAIL CARRIER               )
BAG COMMITTEE, HILEX POLY CO.,            )
LLC, and SUPERBAG CORPORATION,            )
                                          )
    Defendant-Intervenors.                )
_____)

**RESPONSE BRIEF OF DEFENDANT-INTERVENORS IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

J. Michael Taylor
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500

*Counsel to the Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation*

November 8, 2022

323072

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT PURSUANT TO RULE 56.2 ........................................................................ 1

ARGUMENT .......................................................................................................................... 2

I. GIVEN THAT EURO SME FALSIFIED CERTAIN SALES QUANTITY DATA, THE USE OF PARTIAL "FACTS AVAILABLE" CLEARLY WAS IN ACCORDANCE WITH LAW AND, INDEED, AN *ADVERSE* INFERENCE WOULD HAVE BEEN APPROPRIATE .................................................................................. 2

II. APPLICATION OF PARTIAL ADVERSE FACTS AVAILABLE FOR FOREIGN INLAND FREIGHT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW ................................................................................................................. 4

III. COMMERCE CORRECTLY REFUSED TO REVISE ITS CALCULATION OF THE FREIGHT REVENUE CAP ............................... 6

    A. Euro SME Failed To Exhaust Its Administrative Remedies And Thus Failed To Preserve This Issue For Appeal ........................... 6

    B. Alternatively, The Argument Presented By Euro SME Was Not "Ministerial" In Nature And Thus Could Not Be Addressed After Publication Of The *Final Results* ............................... 9

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dongguan Sunrise Furniture Co., Ltd. v. United States*,
  865 F. Supp 2d 1216, 36 C.I.T. 860 (2012)......................................................10

*Dorbest Ltd. v. United States*,
  604 F.3d 1363 (Fed. Cir. 2010) ........................................................................7

*NTSF Seafoods Joint Stock Co. v. United States*,
  Slip Op. 2022-38 (Ct. Int'l Tr. April 25, 2022)............................................7, 8, 9

*Pakfood Pub. Co. v. United States*,
  724 F. Supp. 2d 1327 (CIT 2010)......................................................................8

*Papierfabrik August Koehler SE v. United States*,
  843 F.3d 1373 (Fed. Cir. 2016) .........................................................................3

*QVD Food Co. v. United States*,
  658 F.3d 1318 (Fed. Cir. 2011) .....................................................................7, 8

*Stanley Works (Langfang) Fastening Systems Co., Ltd. v. United States*,
  37 CIT 1369, 964 F. Supp. 2d 1311 (2013)......................................................7

**Statutes**

19 U.S.C. § 1677e(b) ...............................................................................................3

**Federal Regulations**

19 C.F.R. § 351.224 ...............................................................................................12

19 C.F.R. § 351.224(c)........................................................................................6, 8

19 C.F.R. § 351.224(f)...........................................................................................10

**Administrative Materials**

*Large Power Transformers from Korea*,
   81 Fed. Reg. 27088 (May 5, 2016) .................................................................. 11

*Polyethylene Retail Carrier Bags From Malaysia: Final Results of
   Antidumping Duty Administrative Review; 2019-2020*,
   87 Fed. Reg. 12933 (March 8, 2022) .......................................................... *passim*

*Wooden Bedroom Furniture from China*,
   75 Fed. Reg. 50992 (Aug. 18, 2010) ................................................................ 10

## **STATEMENT PURSUANT TO RULE 56.2**

Defendant-Intervenors Polyethylene Retail Carrier Bag Committee and its individual members, Hilex Poly Co., LLC and Superbag Corporation respond in opposition to the Motion for Judgment on the Agency Record and the Brief in Support thereof ("*Pl. Br.*") filed on August 19, 2022 by Plaintiff Euro SME Sdn Bhd ("Euro SME" or "Plaintiff").  Plaintiff contests certain aspects of the final results issued by the U.S. Department of Commerce ("Commerce") in *Polyethylene Retail Carrier Bags From Malaysia: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 12933 (March 8, 2022) ("*Final Results*"), Appx2151-2172.

Defendant-Intervenors agree with Defendant United States' Response to Plaintiff's Motion for Judgment on the Agency Record filed on October 18, 2022 (ECF No. 25) ("*Def. Br.*").  To minimize repetition, Defendant-Intervenors incorporate by reference the issues presented for review, the statement of facts, and the arguments as presented in Defendant's response brief.[1]  For the reasons set forth in Defendant's response brief and as further demonstrated below, Plaintiff's arguments lack merit, and the *Final Results* should be affirmed.

---

[1] Defendant-Intervenors also incorporate by reference the factual recitations and arguments presented in their case brief submitted to Commerce in the underlying administrative review.  See Appx82226-82243.

# ARGUMENT

I. **GIVEN THAT EURO SME FALSIFIED CERTAIN SALES QUANTITY DATA, THE USE OF PARTIAL "FACTS AVAILABLE" CLEARLY WAS IN ACCORDANCE WITH LAW AND, INDEED, AN *ADVERSE* INFERENCE WOULD HAVE BEEN APPROPRIATE**

In its verification response, Plaintiff attempted to reconcile the actual weights reported in its sales files to "loading advice" documents maintained in the normal course of business. Appx81851, Appx81934. The numbers, however, did not align. *See* Appx82226-82229, Appx82240. Rather than acknowledge and explain the discrepancies, Euro SME opted to provide handwritten filler data (*e.g.*, plugging numbers) that would force the numbers to reconcile for the preselected sales being examined at verification – but that Euro SME knew would not reconcile for other sales. *Id*. As explained in the government's brief,

> Upon examination, Commerce determined that these handwritten allocations did nothing more than ascribe a purported actual weight to the transactions Commerce sought to verify—to match whatever actual weight Euro SME had previously reported for those transactions—and then assign any leftover weight to sales transactions, on each "loading advice" document, that Commerce was not verifying. IDM, Appx2164. In other words, the allocations were results oriented, and thus useless for verification purposes.

*Def. Br*. at 12.

Moreover, those handwritten notes suggest intentional deception. As described in the government's brief, "not only did that actual weight data fail to

align with the data Euro SME had put on the record, Euro SME inexplicably tried to gloss over these discrepancies by endorsing allocations that the numbers themselves could never reconcile. Appx1998-2093, Appx81843-82224." *Def. Br.* at 14. The company simply "derive{d} incorrect numbers and then ma{de} it appear as if they corresponded to actual transactions on its sales database." *Id*. at 16. And to this day, "Euro SME does not explain why, upon being asked to verify those numbers, it sought to include handwritten (and results oriented) 'actual weight' allocations to justify prior numbers that it knew it could never validate. IDM, Appx2163-2164; see Appx2185, Appx2197-2199, Appx82280, Appx82750-82751." *Id*. at 16. In other words, Euro SME reported, without any explanation, what appears to be falsified information with its verification response in order to give the misimpression that reported quantities reconciled to documents maintained in the normal course of business.

Given Euro SME's behavior, an adverse inference under 19 U.S.C. § 1677e(b) would have been appropriate, because the conduct here is far from the cooperation that the "best of its ability" standard requires. *See Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1379 (Fed. Cir. 2016). Commerce, in a decision that was charitable to Euro SME, nonetheless declined to apply adverse

facts available ("AFA").[2]  Thus, although Commerce found Euro SME's reported actual weights to be unreliable, Commerce elected to apply *neutral* facts available; *i.e.*, adjusting reported quantities based on the weighted-average variances discovered at verification.  Appx2165.  Remarkably, Euro SME now has the temerity on appeal to repay that charity by arguing that Commerce should have used alternative neutral facts available even more favorable to Euro SME, such as "standard weights" or "numbers of bags."  *Pl. Br.* at 12-15.  Commerce, however, adequately explained why it did not use those alternative adjustments, Appx2165, and Euro SME cannot demonstrate that Commerce was compelled to use either of its proposed alternatives.  Commerce's adjustment was reasonable and supported by substantial evidence.

## II.  APPLICATION OF PARTIAL ADVERSE FACTS AVAILABLE FOR FOREIGN INLAND FREIGHT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW

As with quantities, Euro SME was unable to document in its verification response amounts reported as foreign inland freight for U.S. sales ("DINLFTPU").  Appx82230-82231, 82243, Appx2168-2170.  Rather, in the same manner as described above, the verification response simply pretended that freight amounts reconciled for Commerce's pre-selected sales under examination, while concealing

---

[2]  When evaluating the "best of its ability" standard, Commerce focused solely on the purported size of the discrepancies, without even addressing Euro SME's brazen attempt to fabricate numbers.  Appx2165.

4

all unreconciled differences within the non-selected sales in the same shipment. *Id*. As Commerce explained, "Euro SME appears to have tried to mask non-immaterial variances between its reporting and supporting verification documentation by placing the entirety of the variances on transaction that were not selected for the sales traces." Appx2171.  In other words, Euro SME again misreported information in the verification response to give the misimpression that reported DINLFTPU amounts reconciled to documents maintained in the normal course of business. *See also Def. Br*. at 25 (Euro SME "attempted to manufacture a conclusion that did not accord with reality").

In the final results, Commerce determined that an adverse inference was appropriate, because – given Euro SME's misconduct – the company clearly did not act to the "best of its ability" to report correct inland freight information. Appx2170-2171.  In its appeal brief, Plaintiff does not address any of Commerce's detailed findings regarding the falsified numbers in the verification exhibits, and it offers nothing more than a conclusory assertion that its cooperation was "extraordinary." *Pl. Br.* at 2.  Moreover, although Plaintiff's brief contains a discussion of the legal standard for applying AFA, it makes no attempt to apply the law to the facts of this case or to explain why Commerce erred in applying AFA in the circumstances presented here. *Id*. at 2-6.  Because Euro SME clearly failed to act to the best of its ability to report correct and verifiable inland freight data,

5

Commerce's application of partial AFA was reasonable and was in accordance with law.

### III. COMMERCE CORRECTLY REFUSED TO REVISE ITS CALCULATION OF THE FREIGHT REVENUE CAP

#### A. Euro SME Failed To Exhaust Its Administrative Remedies And Thus Failed To Preserve This Issue For Appeal

After publication of the *Final Results*, Euro SME submitted ministerial error comments pursuant to 19 C.F.R. § 351.224(c) alleging that the freight revenue cap used in the final margin program was incorrect.  Appx82766-82770.  In particular, Euro SME alleged that the cap should have been set at the sum of ***all*** U.S. movement expenses (*i.e.*, international freight, duties, brokerage & handling, inland freight, warehousing, etc.) rather than solely at the amount of international freight. *Id*.  Commerce refused to entertain this argument, however, because it had not been not timely asserted.  In particular, Commerce observed that freight revenue was capped by the amount of international freight in the preliminary results, and yet "Euro SME did not timely argue in its case brief that the freight revenue cap used in the *Preliminary Results* should be changed for the *Final Results*."  Appx2226.  Because Euro SME failed to address this issue in its case brief, Commerce declined to address the matter after the *Final Results* as a "ministerial error."  *Id*.

Commerce's decision was in accordance with law.  As explained in Defendant's brief, Euro SME could have addressed this issue in its case brief but

failed to do so, and thus Commerce was not required to address the matter for the first time after the *Final Results* as a ministerial error. *See Def. Br.* at 26-29, citing *QVD Food Co. v. United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011); *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1376-77 (Fed. Cir. 2010); *Stanley Works (Langfang) Fastening Systems Co., Ltd. v. United States*, 37 CIT 1369, ____, 964 F. Supp. 2d 1311, 1341 (2013). Defendant-Intervenors would add another citation to a recent case supporting the government's position. In *NTSF Seafoods Joint Stock Co. v. United States*, Slip Op. 2022-38 (Ct. Int'l Tr. April 25, 2022) ("*NTSF Seafoods*"), the plaintiff had challenged a purported ministerial error for the first time after the final results, even though the issue could have been presented in the administrative case brief, and it then appealed Commerce's decision not to make a correction. This Court rejected the plaintiff's appeal, explaining:

> Commerce's regulations require parties to use their case briefs to call the Department's attention to issues they consider significant. After the Department issues its preliminary determination, the parties have 50 days to file case briefs that "must present all arguments that continue in the submitter's view to be relevant to the Secretary's determination or final results, including any arguments presented before the date of publication of the preliminary determination or preliminary results." 19 C.F.R. § 351.309(c)(2). Both Commerce and reviewing courts normally find an argument not presented in a party's case brief to be waived unless the argument could not have been raised in the case brief. "Generally, the 'prescribed remedy' for a party in disagreement with Commerce's Preliminary Results is to file a case brief, and that case

7

> brief must present *all* arguments that *continue* in the submitter's view to be relevant to Commerce's final determination or final results." *Pakfood Pub. Co. v. United States*, 724 F. Supp. 2d 1327, 1350 (CIT 2010) (cleaned up and emphasis in original).
>
> The Department's regulations do recognize that in some cases, a mistake might first appear in the final determination, when it would be too late for a party to address the issue via the (already-filed) case brief. The regulations therefore provide that when Commerce notifies a party to the proceeding of the calculations used in connection with "a final determination or the final results of a review," the party may submit comments about a "ministerial error" within five days. 19 C.F.R. § 351.224(c)(1)–(2). The regulation also provides, however, that "{c}omments concerning ministerial errors made in the preliminary results of a review should be included in a party's case brief." *Id*. § 351.224(c)(1).

*NTSF Seafoods* at pages 23-25.

The plaintiff in *NTSF Seafoods* contended that the regulation makes it *optional* for parties to address in their case brief ministerial errors present in a preliminary determination. But this Court disagreed, explaining the Federal Circuit "treats the regulations as mandatory":

> Commerce discloses any calculations made in the preliminary results to interested parties, and interested parties must point out any ministerial errors in their case briefs. ... Commerce's refusal to make a ministerial correction is not reversible error when the alleged mistake was discoverable during earlier proceedings but was not pointed out to Commerce during the time period specified by regulation.

8

> *QVD Food Co. v. United States*, 658 F.3d 1318, 1328
> (Fed. Cir. 2011) (cleaned up and emphasis added); *see
> also Stanley Works (Langfang) Fastening Sys. Co. v.
> United States*, 964 F. Supp. 2d 1311, 1341 (CIT 2013)
> (same). The regulation's language that a party "may
> submit comments" does not mean that compliance with
> the regulation and its time limits is optional—rather, it
> simply means that parties have a choice whether to submit
> ministerial error allegations at all.

*NTSF Seafoods* at pages 29-30.

Oddly, in its appeal brief, Plaintiff makes no attempt to grapple with the basis for Commerce's rejection of its argument. Plaintiff does not contend, for example, that its ministerial error argument was timely presented or, if not, that Commerce nonetheless abused its discretion by declining to address it. Instead, Euro SME simply argues the merits of the freight revenue cap issue as if that had been the basis upon which Commerce's decision was predicated.[3]

### B. Alternatively, The Argument Presented By Euro SME Was Not "Ministerial" In Nature And Thus Could Not Be Addressed After Publication Of The *Final Results*

Even assuming *arguendo* that Euro SME had the option of raising ministerial errors present in the preliminary results for the first time after the final results, its

---

[3] Presumably, Euro SME will address the procedural issues upon which Commerce's decision was based for the first time in its reply brief, thereby depriving Defendant and Defendant-Intervenor an opportunity to rebut its arguments. But having failed to present these arguments in its opening brief, Euro SME has waived them. In this respect, Euro SME appears to recapitulate on appeal the same problem in the underlying proceeding that gave rise to this action. Again, there was no reason why Euro SME could not have presented those arguments in its opening brief, and the Court should not entertain them for the first time in reply.

argument still must fail. That is because the alleged error is not "ministerial" in nature. Under Commerce's regulations, a "ministerial error" is "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial." 19 C.F.R. § 351.224(f). Euro SME contends that the evidentiary record supports a finding that reported freight revenues are associated with all movement expenses and, consequently, that such other expenses should be included (along with international freight expense) in the cap. *Pl. Br.* at 16-17. But Euro SME makes no claim, nor could it, that the cap employed in both the preliminary and final results was the result of some unintentional arithmetic or similar error.

The appropriate calculation of the freight revenue cap is a factual and methodological question. Although freight revenues typically are permitted to offset corresponding freight costs, the burden rests with the respondent to demonstrate the relationship between the revenues and specific expenses. *See, e.g., Wooden Bedroom Furniture from China*, 75 Fed. Reg. 50992 (Aug. 18, 2010) (final results) at Comment 26 (capping freight revenues at certain inland freight components of movement expense); upheld at *Dongguan Sunrise Furniture Co., Ltd. v. United States*, 865 F. Supp 2d 1216, 1251, 36 C.I.T. 860, 897 (2012). Determining how to set the freight revenue cap involves a factual analysis regarding

which expenses are associated with the revenue. When another respondent tried to present similar arguments as "ministerial error" comments, Commerce determined that the question of which expenses to use in applying the freight revenue cap "is methodological in nature" and thus is not a "ministerial error." *See Large Power Transformers from Korea*, 81 Fed. Reg. 27088 (May 5, 2016) (amended final results).

Plaintiff contends that it did, in fact, demonstrate that freight revenues were associated with all movement expenses. *Pl. Br*. at 16-17. But that is a factual question for Commerce to decide, which it cannot do as a "ministerial error." Moreover, it should be observed that the evidence cited by Plaintiff in support of its contention is hardly dispositive. Euro SME merely presents calculations showing that, for certain example sales, reported freight revenues – even if they do not closely match the total of all movement expenses – are sufficiently large that they *could* reflect all movement expenses. *Id.* Euro SME failed to show that this is broadly true across all sales. And even for the sample sales discussed in its brief, Euro SME cited no record evidence documenting any links between the relevant revenues and expenses. *Id.* In other words, the record contains no contracts, invoices, emails, or any other evidence showing that the freight revenue amounts paid by customers related to any of the expenses at issue. Thus, even if Euro SME had presented this argument in its agency case brief (which it did not do), it

11

properly would have failed on the merits. Again, however, there was no reason for Commerce to address the merits here, because such methodological issues are not addressable under the regulatory provision for correcting "ministerial errors" after publication of final results. 19 C.F.R. § 351.224. Commerce did not err, therefore, in refusing to address the matter for the first time after the final results.

## CONCLUSION

For the reasons set forth above, Plaintiff's arguments lack merit, and the Court should affirm the *Final Results*.

                                                  Respectfully submitted,

                                                  */s/ Daniel Schneiderman*
                                                  J. Michael Taylor
                                                  Daniel L. Schneiderman

                                                  KING & SPALDING LLP
                                                  1700 Pennsylvania Avenue, NW
                                                  Washington, DC  20006
                                                  (202) 737-0500

November 8, 2022                          *Counsel to Defendant-Intervenors*

## CERTIFICATE OF COMPLIANCE
## WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's *Standard Chambers Procedures*, the undersigned certifies that this brief complies with applicable word count limitations. Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief includes <u>2,735</u> words. In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

/s/ *Daniel Schneiderman*
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW,
Washington, DC 20006
(202) 737-0500

*Counsel to Defendant-Intervenors*

November 8, 2022